IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RONNIE BRUCE EVANS                                                    PLAINTIFF

v.                                   Civil No.   12-2111

DEPUTY CECILIA RAMIREZ;
MAIL CLERK MARLI HORTON;
MAIL CLERK LISA ROBINSON;
MAIL CLERK NOLA IRVIN;
MAIL CLERK TAMMY DAHLEM;
LT. CUPP; and CAPTAIN MARVIN                                          DEFENDANTS

### MEMORANDUM OPINION

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  He proceeds

*pro se* and *in forma pauperis.*  The case is before me pursuant to the consent of the parties (Doc. 19).

While he was incarcerated at the Crawford County Detention Center (CCDC), Plaintiff

maintains Defendants violated his constitutional rights by opening his legal mail when he was not

present.  Pending before me is the Defendants' motion for summary judgment (Doc. 28).  Plaintiff

filed a response (Doc. 35) and a supplemental response (Doc. 38).

### 1.  Background

On August 31, 2011, Deputy Ramirez opened Plaintiff's legal mail outside his presence.

*Plaintiff's Response* (Doc. 35)(hereinafter *Resp.*) at ¶ 2.  Plaintiff submitted a grievance concerning

this incident.  *Id.* at ¶ 3; (Doc. 1 at pg. 10).  Deputy Ramirez responded and apologized.  *Resp.* at ¶

4; (Doc. 1 at pg. 10).  She indicated she did not realize the letter was legal mail.  *Id.*  Plaintiff,

however, believes she did know the mail was from the United States District Court and was legal

mail.  *Id.* at ¶ 7.

On September 8th, Plaintiff submitted another grievance regarding the August 31st opening

of his mail. *Resp.* at ¶ 5; (Doc. 1 at pg. 11). Lieutenant Cupp reminded Plaintiff that the mail had been opened by mistake and that Deputy Ramirez had apologized. *Id.*

On September 9th, Plaintiff's legal mail was open when he received it. (Doc. 1 at pg. 7). Plaintiff was told that it had been received from the administrative office opened. *Id.* He was advised by Captain Marvin that one of four ladies working in the mail room, Marli Horton, Lisa Robinson, Nola Irvin, and Tammy Dahlem, had opened it by mistake. *Id.*

By affidavit, Marli Horton states: "I am not completely sure, but I believe that I am the individual who opened the Plaintiff's legal mail by accident on or about September 9, 2011." *Defts Ex.* A at ¶ 5. She explained that "[m]ost likely I accidentally opened the mail in question because I mistook it for a payment that was mailed to the Sheriff's Department." *Id.* at ¶ 7. She further indicated that she did not ordinarily open inmate mail as it was sent to the jail unopened for further processing. *Id.* at ¶ 6.

On September 23rd,[1] Sergeant Dowdy received from the administration building all inmate mail including legal mail addressed to the Plaintiff that was open. (Doc. 1 at pg. 13). Sergeant Dowdy delivered the envelope to Plaintiff personally so she could explain to him that she did not open it but had merely noticed that it was open. *Id.* By grievance, Plaintiff asked Sergeant Dowdy to determine who opened the envelope. *Id.;* (Doc. 1 at pg. 12).

Plaintiff was advised that the mail had been opened by accident by one of the ladies across the street in the administration office. (Doc. 1 at pg. 14). It was unclear which of the four ladies opened the mail. *Id.* at pg. 17. The ladies were advised to be more careful and cautious about inmate mail. *Id.* at pg. 14.

With respect to detainee legal mail, the jail policy provides:

---

[1] For reasons not clear to the Court, Defendants do not separately discuss this incident.

> Mail from or to a detainee's attorney, news media, public officials, and judges marked <u>PRIVILEGED</u> shall be delivered to the detainee without delay. This mail shall be sealed or opened and inspected for contraband in the presence of the detainee. The mail will not be read, censored or copied. Notation will be made on the detainee's booking card that the letter was opened or closed in the detainee's presence.

(Doc. 1 at pg. 21).

With respect to Lieutenant Cupp and Captain Marvin, Plaintiff maintains they violated his federal constitutional rights "[b]y repeatedly refusing to find out who opened my legal mail so I could have a name to the individual who opened my legal mail. I had a right to know." *Resp.* at ¶ 28. If he had been informed at the time that Marli Horton opened his mail, Plaintiff states he would not have named Lisa Robinson, Nola Irvin and Tammy Dahlem as Defendants. (Doc. 38 at pg. 4).

He further asserts that while he was being booked in that he overheard Lieutenant Cupp saying that the detention center need to stop the number of detainee lawsuits being filed. (Doc. 38 at pgs. 1-2). He also maintains that mail procedures were not properly followed by the detention center or the administrative office. *Id.* at ¶ 29.

### 2. Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." <u>National Bank of Commerce v. Dow Chemical Co.</u>, 165 F.3d 602, 607 (8th

Cir. 1999).

### 3.  Discussion

Defendants maintain that Plaintiff there are no allegations that could possibly give rise to county liability in this case.  They assert that the Plaintiff has not alleged that a county policy or custom was the moving force behind an underlying violation.  Further, they argue that the isolated incidents at issue in this case do not rise to the level of a constitutional violation.

"Inmates have a First Amendment right of free speech to send and receive mail.  Hudson v. Palmer, 468 U.S. 517, 547 (1984).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977).

"Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence."  Davis v. Norris, 249 F.3d 800, 801 (8th Cir. 2001).  "Interference with legal mail implicates a prison inmate's right to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  "A prison policy that obstructs privileged inmate mail can violate inmates' right of access to the courts."  Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998).

Restrictions on this First Amendment right are valid "only if [they are] (1) reasonably related to legitimate penological interests,"such as security, order, or rehabilitation and are (2) no greater than necessary to the protection of the governmental interest involved.  Turner v. Safely, 482 U.S. 78, 89 (1987).  In balancing the competing interests, courts afford greater protection to legal mail than non-legal mail and greater protection to outgoing mail than to incoming mail.  See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989).

Legal mail "cannot be opened for inspection outside the inmate's presence." Cody v. Weber, 256 F.3d 764, 768 (8th Cir. 2001); see also Thongvanh v. Thalacker, 17 F.3d 256, 258-59 (8th Cir. 1994)(prison officials' duty to maintain security within prison does not extend to reading inmates' legal mail).  However, "an isolated, inadvertent instance of opening incoming confidential legal mail" will not support "a § 1983 damage action unless there is evidence of improper motive or resulting interference with the inmate's right to counsel or access to the courts. Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997).

> The act of opening incoming mail does not injure an inmate's right to access to the courts.  The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband.

Id.

In this case, Plaintiff identifies three instances when his legal mail was delivered to him opened.  Plaintiff has sued the Defendants in their official capacities only.  (Doc. 1 at pg. 4).  An official capacity claim"is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).  In other words, the official capacity claims are treated as claims against Crawford County.  See Murray v. Lene, 595 F.3d 868, 873 (8th Cir. 2010).

"A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right." Alexander v. Hedback, 718 F.3d 762, 766 (8th Cir. 2013)(citations omitted).  "A governmental policy involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir.

2007)(internal quotations and citations omitted).  A "custom involves a pattern of persistent and widespread . . . practices which become so permanent and well settled as to have the effect and force of law." *Id.*

"[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).  "Moreover, the plaintiff must show not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional." Luckert v. Dodge County, 684 F.3d 808, 820 (8th Cir. 2012)(internal quotation marks and citation omitted).

Here, Plaintiff does not challenge the policy itself.  Instead, he maintains that the policy was not followed on three separate occasions.  While Plaintiff "has shown flaws" in Crawford County's "practices, [he] has not demonstrated the continuing, widespread, persistent pattern of constitutional misconduct necessary to find the county liable." *Id.*  On the facts of this case, there is simply no basis on which the county can be held liable.

### 4.  Conclusion

For the reasons stated, Defendants' motion for summary judgment (Doc. 28) will be granted by separate order entered this same date.

DATED this 15th day of August 2013 .

/s/ *J. Marschewski*

 HON. JAMES R. MARSCHEWSKI
 CHIEF UNITED STATES MAGISTRATE JUDGE